Filed 4/22/22  Marriage of Bonner CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# COURT OF APPEAL, FOURTH APPELLATE DISTRICT

# DIVISION ONE

# STATE OF CALIFORNIA

|  |  |
|---|---|
| In re the Marriage of CANDY and TERENCE BONNER. | D078148 |
| CANDY BONNER, | |
| Respondent, | (Super. Ct. No. ED88462) |
| v. | |
| TERENCE BONNER, | |
| Appellant. | |

APPEAL from a judgment and postjudgment orders of the Superior Court of San Diego County, Frank L. Birchak, Judge.  Remanded for further proceedings, and in all other respects affirmed.

Terence Bonner, in pro. per., for Appellant.

No appearance for Respondent.

In this marriage dissolution action involving Terence and Candy Bonner, Terence[1] appeals from (1) the trial court's August 7, 2020 judgment on reserved issues, which divided the parties' community property and awarded sanctions under Family Code section 271;[2] and (2) the trial court's September 22, 2020 rulings on Terence's postjudgment motions for a new trial and to set aside and vacate the judgment.

Terence raises numerous issues, many of which we reject either because Terence's arguments are not meritorious or because Terence has failed to sufficiently develop his arguments and provide the necessary citations to the record and to legal authority.

However, as we will explain, Terence has identified three issues which require that this matter be remanded to the trial court. First, there is an apparent inconsistency in the trial court's statement of decision with respect to the amount of the equalization payment that Candy would be required to pay to Terence, prior to taking into account the trial court's award of sanctions to Candy pursuant to section 271. Remand is required for the trial court to resolve the inconsistency. Second, remand is required for the trial court to rule on Terence's request that he be reimbursed for his payment of Candy's automobile insurance after the date of separation. Third, the trial court incorrectly believed that it lacked authority to terminate its continuing jurisdiction over spousal support. On remand the trial court may decide whether to exercise its discretion to do so. We accordingly remand for the

---

[1] As is customary in family law matters, because the parties have the same last name, we refer to them by their first names to avoid any confusion, and we intend no disrespect by doing so.

[2] Unless otherwise indicated, all further statutory references are to the Family Code.

2

trial court to address those issues, and in all other respects we affirm the judgment and the postjudgment orders.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Terence and Candy were married in March 1978. On August 30, 2012, Candy filed a petition for dissolution, in which she alleged August 29, 2012, as the date of separation. In January 2014, the trial court entered a judgment of dissolution as to the parties' marital status only.

Terence is retired from employment with an agency of the federal government, where he worked from May 1978 until May 2010. Since retirement, Terence has received a federal pension, but he did not share the pension with Candy for the first two years after separation. In July 2014, in response to a request filed by Candy, the trial court ordered Terence to pay Candy half of his pension on a going forward basis.[3] A domestic relations order (DRO) was created to implement the division. Terence made direct payments to Candy for her share of his pension until the pension administrator started making payments to Candy in 2017.

Candy worked for the County of San Diego during the marriage, and she retired in 2019. In 2019, Terence stipulated to a qualified domestic relations order (QDRO) that divided Candy's pension.

During the marriage, the parties purchased a house in El Cajon and a house in Campo. After the date of separation until July 2013, the parties lived together in the Campo house. After that date, Candy moved into the El

---

[3]     In August 2014, Terence appealed the order dividing his pension, which this court addressed in a December 22, 2015 opinion, denying relief to Terence. (*In re Marriage of Bonner* (Dec. 22, 2015, D066627) [nonpub. opn.].) Terence filed an unsuccessful petition for writ of certiorari with the United States Supreme Court. (*Bonner v. Bonner* (2016) 137 S.Ct. 577.)

Cajon house. The El Cajon house produced rental income during the parties' entire separation, including when Candy resided in it.

On eight days between January 29, 2019, and February 11, 2020, the trial court held a trial on reserved marital property issues, as well as on Candy's request for spousal support and both of the parties' requests for an award of attorney fees as a sanction under section 271. Among the community property items at issue were: (1) the parties' two real properties; (2) the parties' respective pensions; (3) Candy's retirement account; and (4) the parties' debt. The parties also sought reimbursement for certain payments they made from separate property funds during separation. During the trial, Candy was represented by counsel, and Terence represented himself.

In a 46-page statement of decision (the Statement of Decision), the trial court made a series of orders concerning the division of the parties' community property and the requests for reimbursement. In addition, the trial court rejected Candy's request for spousal support. The trial court also ordered that Terence pay $37,500 of Candy's attorney fees as a sanction pursuant to section 271, to be paid at the rate of $250 per month. However, the trial court reduced the amount of sanctions that Terence was obligated to pay based on the amount of an equalization payment that it concluded Candy owed to Terence, which it stated was $19,016.30. The trial court reserved jurisdiction on several issues, including spousal support. It also ordered that a new DRO for Terence's pension be prepared to accurately reflect Terence's time of service attributable to his unused sick leave. The trial court ordered that an expert be appointed to calculate the amount that Candy was underpaid from Terence's pension income under the prior version of the DRO.

4

A judgment on the reserved issues was entered on August 7, 2020, which expressly incorporated the Statement of Decision.

Terence filed a motion for a new trial and a motion to set aside and vacate the judgment, which the trial court denied.

Terence filed a notice of appeal from the judgment as well as from the trial court's order denying his postjudgment motions.[4]

## II.

## DISCUSSION

A.  *Terence's Request for an Order Requiring That the Trial Court Approve Additional Settled Statements*

The appellate record submitted by Terence in connection with this appeal contains 25 volumes of reporter's transcripts plus eight settled statements certified by the trial court. However, there were several oral proceedings held during the course of the litigation for which no reporter's transcript or settled statement is available. Terence requests that we issue an order requiring the trial court to approve settled statements for those oral proceedings, followed by an opportunity for him to submit an amended appellate brief.

We begin our analysis with the applicable legal provisions. When oral proceedings in the trial court have not been reported, California Rules of Court, rule 8.137 provides that appellants may elect in their designation of the record on appeal to proceed by settled statement. (Cal. Rules of Court, rule 8.137(b)(1).)[5] After making that election, appellants must serve and file a proposed settled statement in the superior court within 30 days. (Rule 8.137(c)(1).) Rule 8.137 sets forth further procedures to be followed regarding

---

4  Candy did not file a respondent's brief.

5  All further rule references are to the California Rules of Court.

the settled statement, culminating in certification by the trial court. (Rule 8.137(h)(1).) In instances where an oral proceeding has been reported but "any portion of the designated proceedings cannot be transcribed, the superior court clerk must so notify the designating party in writing," and the party may then substitute a settled statement by filing a motion to do so, and then proceeding as in Rule 8.137. (Rule 8.130(h).) "[T]he discretion of the trial court to deny a request for a settled statement is limited: 'When a proper motion is made, it is the obligation of the parties and the court to work together to prepare the settled statement. California law has long recognized this obligation: a trial court may not "deprive a litigant of his right of appeal by simply refusing to perform a plain duty." ' " (*Rhue v. Superior Court* (2017) 17 Cal.App.5th 892, 895.) "When a trial court denies the motion, . . . it must provide reasons demonstrating a ' "justifiable excuse" why a settled statement could not be produced using the established procedures.' " (*Id.* at p. 896.)

Here, in designating the appellate record, Terence identified 58 oral proceedings that took place between December 5, 2012, to September 22, 2020. Terence's designation of the appellate record indicated that 29 of those oral proceedings were not reported. Many of the unreported proceedings were from resolution conferences, ex parte motions, hearings on fee waiver requests, and hearings on discovery matters. Terence's designation of the appellate record did not indicate that he intended to proceed by settled statement for any of the unreported proceedings.

On November 4, 2020, the clerk of the superior court issued an order identifying the 29 oral proceedings that were not reported. The order stated that a settled statement could be used in lieu of a transcript if Terence filed a

6

motion to use a settled statement within ten days in accordance with rule 8.130(h).

On November 16, 2020, Terence filed a motion to use a settled statement for all of the proceedings that could not be transcribed. The motion identified the 29 unreported oral proceedings, as well as four other proceedings that were reported, but for which the court reporter's notes had been destroyed because more than five years had passed.

On December 24, 2020, the trial court issued an order on Terence's motion to use a settled statement. The trial court first addressed the request for settled statements for the 29 unreported proceedings. As the trial court explained, "[w]hen a proceeding has not been reported . . . the appellant must file a proposed settled statement in superior court within 30 days after filing its notice. (Rule . . . 8.137(c)(1).) For the 29 hearings that were not reported, [Terence] has not filed any proposed settled statements as of December 24, 2020. The proposed settled statements were due December 17, 2020." Although it could have done so, the trial court did not expressly deny Terence's motion based on his failure to timely file proposed settled statements for the 29 hearings. Instead, the court ruled as follows:

> "For the unreported hearings before 10/25/17, the Court denies [Terence's] request for a settled statement. All of these proceedings were presided over by a different judicial officer. Because there was a different judicial officer presiding, this judicial officer would be unable to settle any proposed statements. This judicial officer's analysis of those proceedings in the context of . . . section 271 sanctions simply relied on the orders and pleadings filed related to those hearings, not the content of the oral proceedings. Therefore, what was relied on for the consideration of those hearings—as to the impact on section 271 sanctions—is available to [Terence] through the documents in the court file and a settled statement regarding oral proceedings is unnecessary. The rulings from those hearings are also not the subject of this appeal.

7

"Of the hearings that this judicial officer presided over, the Court sees no possible relevance of the 8/27/18 Family Resolution Conference.  It is not a proceeding being appealed and the purpose is not any formal orders, simply case management.  It is not a hearing referenced in the Court's discussion of section 271 sanctions.  The Court denies his request for a settled statement of that hearing.

"The Court orders [Terence] to file proposed settled statements on the 9 remaining hearings that were not reported within 30 days after the notice for this order is sent.  These hearings are from the following dates:  10/25/17, 12/11/17, 3/14/18, 4/5/18, 5/3/18, 5/17/18, 5/24/18, 11/7/18, and 12/19/18. . . .  The Court reserves on whether these hearings are relevant to the appellate proceedings until the Court receives the properly filed proposed statement with the statement of points the appellant is raising on appeal."

The trial court also addressed the four oral proceedings that were reported but for which the court reporter's notes had been destroyed due to the passage of time.[6]  As to those proceedings, the trial court denied the motion to proceed by settled statement:

"The rulings from those hearings are not the subject of this appeal.  None of these proceedings were explicitly cited in the Court's statement of decision.  Each of these proceedings was presided over by a different judicial officer, Commissioner White.  Commissioner White is no longer with the Court and is unavailable.  Because there was a different judicial officer

[6]    According to Terence, the oral proceedings that were transcribed but for which the court reporter's notes were destroyed were as follows: (1) "Family Resolution Conference.  (12/05/12)"; (2) "Hearing re:  Candy's motions to divide Terence's pension; to require Terence to seek employment; to lift the stay of proceedings; and to lift the stay of discovery.  (04/08/14)"; (3) "Hearing re:  Terence's motion to reconsider the trial court's employment efforts order.  (06/03/14)"; and (4) "Hearing re:  Candy's motion to compel further discovery responses from Terence; and Terence's motion to strike portions of Candy's pleadings.  (09/04/14)."

presiding, this judicial officer would be unable to settle any proposed statements. This judicial officer's analysis of those proceedings in the context of . . . section 271 sanctions simply relied on the orders and pleadings filed related to those hearings, not the content of the oral proceedings. Therefore, what was relied on for the consideration of those hearings—as to the impact on section 271 sanctions—is available to [Terence] through the documents in the court file and a settled statement regarding oral proceedings is unnecessary."

On January 28, 2021, Terence filed proposed settled statements for the nine hearing dates identified in the trial court's order.[7] On March 22, 2021, the trial court issued an order certifying the settled statements for all but the May 17, 2018 hearing. The trial court explained, "For the unreported hearing 5/17/18, the Court denies [Terence's] request for a settled statement. This was presided over by a different judicial officer, therefore this judicial officer is unable to settle the proposed statements. This judicial officer's analysis of those proceedings in the context of section 271 sanctions simply relied on the orders and pleadings filed related to those hearings, not the content of the oral proceedings. Therefore, what was relied on for the consideration of those hearings—as to the impact on section 271 sanctions— is available to [Terence] without a settled statement. All other dates contain an accurate summary."

Terence contends on appeal that the trial court erred because it denied his motion for a settled statement as to all but eight of the oral proceedings that either were not reported or for which the court reporter destroyed the

---

7    Terence's proposed settled statement for the May 17, 2018 hearing is not in the appellate record, presumably due to the fact that, as we will explain, the trial court declined to certify it.

9

notes.[8]  As a remedy, Terence requests that we order the trial court to provide the missing settled statements and that we then permit him to file an amended opening appellate brief.

We reject Terence's challenge to the trial court's orders denying the settled statements because we do not have jurisdiction to consider it as part of this appeal.  The long-established rule is that "*mandamus* is the proper and exclusive remedy when a trial judge refuses to settle a statement which it is his duty to settle; that is to say, in a case where the moving party has strictly and fully complied with the requirements of the statute in proposing and presenting the statement for settlement. . . .  [A] wrongful refusal to settle a statement is not the subject of appeal, but is to be corrected by a writ of mandate."  (*Murphy v. Stelling* (1903) 138 Cal. 641, 642-643 (*Murphy*), citations omitted; see also 9 Witkin, Cal. Procedure (6th ed. 2022) Appeal, § 691, p. 722 ["The normal remedy of an appellant when the trial judge arbitrarily refuses to settle a statement is mandamus."]; *Brode v. Goslin* (1910) 158 Cal. 699, 701 (*Brode*) ["the proper and exclusive remedy for such wrongful refusal is mandamus to compel the settlement."].)[9]

Terence cites *Randall v. Mousseau* (2016) 2 Cal.App.5th 929, in which the court stated, "To preserve the issue of the denial [of a request for a settled statement] for appeal, the appellant may seek writ review at the time of the

_____

[8]    As we have noted, even without the hearings for which Terence seeks to obtain settled statements, the appellate record does contain 25 volumes of reporter's transcripts plus the eight settled statements certified by the trial court.

[9]    In *Brode, supra,* 158 Cal. 699, our Supreme Court discussed the trial court's refusal to settle a bill of exceptions.  "The settled statement is a modernized version of the bill of exceptions."  (9 Witkin, *supra*, Appeal, § 684, p. 714.)

10

denial, *or raise the denial in the opening brief on appeal.*" (*Id.* at pp. 935-936, italics added.) In support, *Randall* cited *Western States Construction Co. v. Municipal Court of San Francisco* (1951) 38 Cal.2d 146, and *Keller v. Superior Court of Los Angeles County* (1950) 100 Cal.App.2d 231. (*Randall*, at p. 936.) However, the statement in *Randall* is dictum. Specifically, it was unnecessary for *Randall* to decide whether a challenge to an order denying a request for a settled statement may be raised in the opening appellate brief because the appellant in *Randall* did not raise a challenge in her opening appellate brief. (*Ibid.*) In addition, the two cases that *Randall* cited to support its statement were writ proceedings (*Western States*, at p. 147; *Keller*, at p. 231), and therefore neither of them say anything about whether an appellant may properly challenge a trial court's denial of a request for a settled statement by simply including the issue in an opening appellate brief. Significantly too, *Randall*'s statement that an appellant may raise the denial of a request for a settled statement in an opening appellate brief is inconsistent with our Supreme Court's holding in *Murphy* that a writ of mandamus is the proper approach to challenge such an order. (*Murphy, supra*, 138 Cal. at pp. 642-643.) We are bound to follow our Supreme Court's precedent. (*Auto Equity Sales, Inc. v. Superior Court of Santa Clara County* (1962) 57 Cal.2d 450, 455-456.)

Even if we were to follow *Randall*'s dictum that a trial court's order denying a request for a settled statement is cognizable on appeal, we would nevertheless not have jurisdiction over such an appeal in this case because Terence failed to file a separate notice of appeal from the trial court's postjudgment orders denying his requests for a settled statement. " 'Our jurisdiction on appeal is limited in scope to the notice of appeal and the judgment or order appealed from.' [Citation.] We have no jurisdiction over

11

an order not mentioned in the notice of appeal." (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 170.) " ' " '[W]here several judgments and/or orders occurring close in time are separately appealable . . . , each appealable judgment and order must be expressly specified—in either a single notice of appeal or multiple notices of appeal—in order to be reviewable on appeal.' " ' " (*Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 1007- 1008.)  Here, Terence did not file a notice of appeal from the trial court's December 24, 2020 and March 22, 2021 postjudgment orders denying his requests for settled statements, which were issued *after* he filed his notice of appeal in this action.

Moreover, although "[a]n appellate court does have discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate, . . . ' "we should not exercise that power except in unusual circumstances." ' " (*Doran v. Magan* (1999) 76 Cal.App.4th 1287, 1294.)  This case does not present unusual circumstances.  Based on Terence's appellate briefing, we conclude that even if we were to order the trial court to certify the settled statements sought by Terence, their presence in the appellate record would not support a different outcome in this appeal.  Terence's appellate brief extensively describes the facts that would have been included in the settled statements that the trial court disallowed.  Terence also refers in detail to the expected content of the disallowed settled statements in making several of his appellate arguments.  He does this throughout his appellate brief by using the citation "DSS," to represent the "Denied Settled Statement" when setting forth the content of those proceedings.[10]  In

---

[10]    Although the reference to the disallowed settled statement occurs multiple times throughout the brief, most of the issues that Terence raises on appeal do not depend on the disallowed settled statements, as they challenge

conducting our analysis, we have assumed that the disallowed settled statements would include that content that Terence represents.  However, even in light of those facts, most of Terence's appellate arguments are without merit.[11]  Terence's appellate challenges fail regardless of whether settled statements were to be made available for the oral proceedings he references in the course of his arguments.[12]

B.    *Terence's Challenge to the Trial Court's July 7, 2014 Order Dividing His Pension*

We next address Terence's challenge to the trial court's 2014 order equally dividing his pension with Candy, which was subsequently confirmed in the Statement of Decision and judgment.

---

orders based on the reported oral proceedings transcribed in the 25 volumes of reporter's transcripts that are in the appellate record plus the eight settled statements certified by the trial court.

[11]    Moreover, it is far from clear whether Terence would be entitled to relief even were we to treat his appeal as a writ.  Most notably, at least for those oral proceedings that Terence knew to be unreported, Terence did not follow the proper procedures to obtain a settled statement because his designation of the appellate record did not indicate that he would proceed by settled statement, and he did not submit proposed settled statements within 30 days.  (Rule 8.137(b)(1), (c)(1).)  The superior court clerk sua sponte issued an order allowing Terence to file a motion to proceed by settled statement despite Terence's procedural default in failing to elect to proceed by settled statement for the 29 hearings that he knew to be unreported and in failing to file proposed settled statements within 30 days.  However, the clerk was not required to do so.

[12]    For the same reason, even if the issue was properly before us on appeal, Terence's appellate challenge would lack merit because he has failed to establish that the denial of his request for a settled statement was prejudicial and caused a miscarriage of justice.  (Code Civ. Proc., § 475; Cal. Const., art. VI, § 13.)

On June 2, 2014, Candy filed a request that Terence be ordered to pay past and future attorney fees, and also that a DRO be issued to allow her to receive half of Terence's pension. On July 7, 2014, the trial court ordered that Terence pay attorney fees to Candy in the amount of $2,500, payable on or before August 1, 2014. The trial court also ordered that Terence was to immediately begin paying Candy one-half of any pension distribution he received and that a DRO be prepared effectuating the division. The order stated, "The court specifically reserves over the characterization and distribution of these funds at a later date as either a property division, or as and for additional attorney's fees." On October 9, 2014, the court issued a DRO. Eventually, the Statement of Decision and judgment specified that the pension distributions pursuant to the DRO were to be characterized as a division of community property. The Statement of Decision explained: "The division through the previous DRO was solely for the purpose of awarding [Candy] her appropriate share of the community property."[13]

Terence argues that the trial court should not have issued the 2014 order dividing his pension because the order had the effect of drastically reducing his monthly income and left him unable to hire an attorney. As a remedy, Terence asks that we order a new trial at which Candy is ordered to pay his attorney fees. Terence also unsuccessfully raised the same issue in his motion for a new trial, in which he argued that "[a] new trial should be ordered to allow both parties to be represented by counsel, leveling the playing field."

_____

[13] Terence's pension was ordered to be equally divided based on the undisputed fact that the parties were married prior to the date when Terence began his employment and that they were separated after Terence's retirement in May 2010.

14

We reject Terence's argument. As the trial court properly explained in the Statement of Decision, if the 2014 order dividing his pension left him without the ability to hire an attorney, Terence was free to file a request that Candy be ordered to pay attorney fees to him. As the trial court pointed out, "Had [Terence] wished to make an argument requesting attorney's fees under . . . section 2030 once the pension was divided, he could have done so." Further, if that request was denied, Terence could have attempted to seek relief from the denial of the request. However, Terence did not file such a request, and Terence's belated request for attorney fees in his motion for a new trial and in this appeal, are untimely. Accordingly, we reject Terence's request that a new trial be ordered so that Candy can be required to pay some of his attorney fees.

C.      *Terence's Challenge to the Denial of His Request for a Fee Waiver in 2016*

On June 8, 2016, Terence filed a request for a fee waiver, which the trial court denied. After Terence filed a further request on July 14, 2017, the trial court granted a fee waiver on October 2, 2017, retroactive to July 14, 2017.

Terence contends that the trial court erred in denying him a fee waiver prior to October 2, 2017, but he presents no legal basis for his contention. He simply contends in his argument heading that the denial was "[u]njustified." (Bolding omitted.)

We reject Terence's challenge to the denial of the fee waiver because he has failed to develop it. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 (*United Grand*) [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' . . . We may and do 'disregard conclusory arguments that are not supported by pertinent

15

legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' "].)

D.     *Terence's Challenge to the Appointment of a Discovery Referee in 2016*

On June 9, 2016, the trial court issued an order appointing a discovery referee pursuant to Code of Civil Procedure section 639, subdivision (a)(5). The order stated that the referee's fees were to be paid equally by the parties and included a finding that neither party had established an economic inability to pay. However, the trial court did indicate that the parties could seek the referee's recommendation as to how to allocate the referee's fees between them. Terence did not participate with the discovery referee. According to Terence, the reference was withdrawn after the trial court granted Terence's request for a fee waiver in October 2017, and thereafter the parties' discovery disputes were handled by the trial court.

Terence contends that the trial court "erred by allocating the discovery reference fees on a pro rata basis in the face of compelling evidence that Terence could not afford to pay for his household's basic needs and the court fees, much less discovery reference fees." We reject Terence's argument because he has failed to establish that any purported error by the trial court was prejudicial or constituted a miscarriage of justice. (Code Civ. Proc, § 475; Cal. Const., art. VI, § 13.) Further, Terence has failed to identify any remedy that he seeks on appeal even were we to conclude that the trial court erred.

E.     *Terence's Challenge to the Trial Court's Discovery Orders*

Terence explains that he filed four motions to compel discovery between August 7, 2017, and September 17, 2018. Terence prevailed on some of the issues raised in those motions.

We understand from the argument heading of Terence's appellate brief that he contends "the trial court erred by failing to compel Candy to fully and

16

accurately disclose all of her assets and liabilities." (Capitalization and bolding omitted.) However, the text of Terence's brief fails to set forth any specific discussion as to how the trial court's discovery rulings were erroneous. We accordingly reject Terence's challenge to the trial court's discovery rulings because the argument is not sufficiently developed. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

F.  *Terence's Challenge to the Trial Court's Ruling on the Adequacy of Candy's Final Declaration of Disclosure*

Prior to trial, Terence filed a motion to compel, in which he argued that Candy had not provided adequate information in her final declaration of disclosure (§ 2105). The trial court held a hearing on November 7, 2018, at which it ruled that Candy was not required to provide any additional disclosure. The trial court's minute order denying Terence's motion stated, "[a]lthough the court finds [Terence's] declarations of disclosure are more detailed than [Candy's], given the case history, extensive discovery and documentation provided, and the appointment of a special master that was not cooperated with, the court finds [Terence] did not meet the burden of proof and denies his motion to compel." Further, apparently because Candy's final declaration of disclosure stated that her trial brief set forth all of the relevant facts within her knowledge, the trial court ordered that "[Candy's] trial brief is adopted as true and correct under oath, and will be held to."

In a brief argument, Terence states that "[n]one of the reasons cited by the court justify denying Terence's motion to compel further declaration of disclosure responses from Candy." He also concludes by stating that the trial court's ruling "deprived [him] of information that he needed and was legally entitled to for settlement purposes and trial." However, Terence fails to develop his argument by addressing any of the grounds given by the trial court for its ruling, and he fails to identify any specific way in which he was

17

prejudiced by the trial court's ruling.  Accordingly, we reject the argument as insufficiently developed.  (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

G.  *Terence's Contention That the Trial Court Failed to Consider Candy's Credibility*

Describing several instances during the litigation that he views as casting doubt on Candy's credibility, Terence makes the sweeping argument that the trial court "failed to factor Candy's lack of credibility into its findings, orders and judgment."

We reject Terence's argument on two grounds.  First, it is insufficiently developed and lacks the necessary specificity, as it refers indiscriminately to all of the trial court's "findings, orders and judgment."  Second, throughout the Statement of Decision, the trial court repeatedly made credibility determinations regarding both Terence and Candy.  That discussion demonstrates, contrary to Terence's contention, that the trial court understood it was required to make credibility determinations as the finder of fact, and it did so with respect to both of the parties.  To the extent Terence disagrees with those credibility determinations, that disagreement is not a ground for reversing the judgment.  " 'We may not reweigh the evidence and are bound by the trial court's credibility determinations.' " (*In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 94.)

H.  *Terence's Contention That the Dollar Amounts Set Forth in the Statement of Decision Are Irreconcilable*

Referring to the Statement of Decision, Terence states that because the trial court did not itemize the credits awarded to each party, the judgment is unclear.  Terence gives a single example, explaining that "the court's judgment stated that Terence would have been entitled to an equalization payment of $19,016.30 if it had not imposed $37,500 in section 271 sanctions against him, but this figure is irreconcilable with the other amounts

18

articulated in the court's judgment." Terence refers to the following language in the Statement of Decision: "The Court orders [Terence] pay $37,500 in sanctions under . . . section 271. $18,483.70 in attorney's fees are to be paid directly to [Candy's] counsel . . . . The other $19,016.30 is satisfied from [Terence's] share of community assets that would have otherwise resulted in an equalization payment. . . . [¶] . . . Neither party owes the other an equalization payment. Without the award of sanctions under section 271, [Candy] would have owed [Terence] $19,016.30. But the Court has applied that amount to the sanctions award under section 271." Terence contends that it is unclear how the trial court arrived at the figure of $19,016.30.

We agree with Terence's assessment. In the course of the 46-page Statement of Decision, the trial court identifies numerous credits for both Candy and Terence, all of which should logically inform the total amount of the equalization payment that Candy would owe Terence prior to the imposition of sanctions. However, when we total all of those credits, we are unable to understand the basis for the trial court's statement that Terence would be entitled to an equalization payment of $19,016.30. Either the trial court committed a mathematical error, or there is some other error in the Statement of Decision (such as an inadvertently omitted credit or a typographical error) that would explain the inconsistency. We are unable, on appeal, to figure out how the inconsistency should be resolved.

The trial court based its order that Terence pay $18,483.70 in attorney's fees to Candy's counsel on the assumption that Candy would have owed an equalization payment of $19,016.30. However, the order for Terence to pay $18,483.70 would be erroneous if Candy's equalization obligation (based on the credits identified in the Statement of Decision) did not, in fact, total $19,016.30. As it currently stands, the judgment is internally

19

inconsistent and unclear as to the parties' financial obligations toward each other. Therefore, we remand to the trial court with directions that it (1) resolve the inconsistency by clarifying how it arrived at the conclusion that Terence would be entitled to an equalization payment of $19,016.30 prior to the application of the sanctions award, and (2) in the course of doing so, correct any figures in the Statement of Decision that it discovers to be inaccurate, and amend the judgment accordingly.

I.     *Terence's Challenge to the Trial Court's Finding Regarding the Date of Separation*

The Statement of Decision includes a finding that the date of separation is August 29, 2012. The trial court stated, "The Court finds [Candy] credible about informing [Terence] of her desire to end the marriage and that her actions from August 29, 2012, onward—such as filing the petition the next day—were consistent with that expressed desire."

Although Terence's response to the petition for dissolution alleged that the date of separation was September 11, 2012, and he assumed during his closing argument at trial that the date of separation should be the date Candy filed the petition for dissolution (i.e., August 30, 2012), he now argues that the trial court should have found the date of separation to be August 27, 2012, or earlier. Citing evidence he put forth for the first time in his motion for a new trial, Terence contends that Candy began expressing her intention to end the marriage "about a year before she filed for divorce." Terence did not present that evidence during the trial, although he could have done so. Terence also points to the fact that, on August 27, 2012, Candy withdrew funds from the parties' joint bank account to pay an attorney to file her August 30, 2012 petition for dissolution.

Under the Family Code, " '[d]ate of separation' means the date that a complete and final break in the marital relationship has occurred, as

20

evidenced by both of the following:  [¶] (1) The spouse has expressed to the other spouse the intent to end the marriage.  [¶] (2) The conduct of the spouse is consistent with the intent to end the marriage."  (§ 70, subd. (a).)  " ' "The ultimate question to be decided in determining the date of separation is whether either or both of the parties perceived the rift in their relationship as final.  The best evidence of this is their words and actions." ' "  (*In re Marriage of Lee & Lin* (2019) 41 Cal.App.5th 698, 701.)  "The date of separation is a factual issue established by a preponderance of the evidence.  We review the trial court's determination for substantial evidence . . . ."  (*Id.* at p. 702.)

Substantial evidence in the record supports the trial court's finding that August 29, 2012, is the date of separation, as that is the day before Candy filed the petition for dissolution.  Terence has not identified any evidence presented during the trial that would preclude such a finding.  Although he focuses on the date of August 27, 2012, because that is when Candy withdrew money from the community bank account, he has not pointed to any evidence that he was aware of the withdrawal at the time, and thus he has not shown that Candy's conduct on that date would necessarily have "expressed to the other spouse the intent to end the marriage."  (§ 70, subd. (a).)

J.  *Terence's Challenge to the Trial Court's Division of the Rental Income from the El Cajon House*

During the period of separation, the parties received rental income from the El Cajon house, which the tenants paid to Candy.  Candy paid almost all of the mortgage and property taxes on the El Cajon house after separation.

The trial court ruled with respect to the rental income as follows: "[Terence] requested reimbursement for the rents received during the period

21

of separation that were paid directly to [Candy]. Rents on community property are community property. (*Boyd v. Oser* (1944) 23 Cal.2d 613, 615.) But the mortgage, insurance, and taxes for the property were community debts. From August 2013 onward, the rent received for the El Cajon property—based on [Terence's] own testimony . . . —was less than the mortgage and associated fees. Community funds are presumed to be used to pay community debts. (*In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1058 [(*Cochran*)].) Therefore, those rents are presumed to have gone to pay the community debt and [Terence] is not entitled to reimbursement of the rents since the debt exceeded the rent." For the period before August 2013, when the rent received was more than the mortgage and associated fees, the trial court calculated Terence was entitled to his half of the amount remaining after payment of those expenses, for a total of $4,799.35.

Terence takes issue with the trial court's reference to *Cochran*, which stated that "[u]nder the family expense presumption, 'in the absence of other evidence, living expenses are presumed to have been paid out of community property rather than separate property . . . .' " (*Cochran, supra,* 87 Cal.App.4th at p. 1058.) Terence points out that the family expense presumption is commonly used in a different context, namely to trace whether separate property remains in a comingled account or was used to make an investment. (E.g., *Beam v. Bank of America* (1971) 6 Cal.3d 12, 20-21; *Cochran,* at p. 1058.) Terence argues that because the authority cited by the trial court is inapplicable, he should be reimbursed for half of the entire rental income.

We reject Terence's argument. Regardless of whether *Cochran* is apposite authority, the trial court's ruling was premised on a simple concept. Candy received community property rental income, but Candy also paid

22

community property debt in the form of the mortgage and property taxes for the community's El Cajon house. The community property rental income and the community's expenses for the El Cajon house offset each other. Therefore, for the period starting August 2013, there was no community property rental income remaining after the payment of the community's mortgage expense with which Terence could be credited. For the period before August 2013, Terence is entitled to half of the rental income that remained after the payment of the mortgage and associated expenses on the El Cajon house, not half of the *entire* rental income.

K. *Terence's Challenge to the Trial Court's Denial of His Postjudgment Motions Regarding the Inclusion of Accrued Sick Leave in Dividing Candy's Pension*

On February 11, 2019, the court issued a QDRO for Candy's pension, which was based on a stipulation of the parties. The QDRO awarded Terence "fifty percent (50%) of the accumulated contributions and service credit attributable to [Candy's] period of service between the date of marriage and the date of separation (the 'Community Period'), including those related to any purchased service credit earned by [Candy] during the Community Period." It is undisputed that Candy had not retired at the date of separation, as she did not retire until 2019. In the Statement of Decision, the trial court stated: "[Candy's] pension was obtained mostly during marriage. The Court confirms that characterization of the pension as a community property asset. A QDRO was already prepared. The Court affirms that QDRO."

In his motion for a new trial and motion to set aside the judgment, Terence argued for the first time that the trial court should have considered during trial whether to amend the QDRO to make sure Terence is receiving his share of any part of Candy's pension that was based on unused sick leave

23

that Candy converted to service credit upon her retirement. In support Terence cites *In re Marriage of Moore* (2014) 226 Cal. App.4th 92. Terence explains that he raised the issue for the first time in his postjudgment motions because the Statement of Decision discussed the issue of Terence's 2,911 hours of sick leave, which added 17 months of service when he retired prior to separation. Specifically, the trial court ordered that a new DRO be prepared for Terence's pension to correct an error in how the previous DRO was worded so that the community was credited with the 17 months of service credit.[14] After noticing the trial court's discussion of the issue regarding his own pension, Terence argued in his postjudgment motions that the trial court should issue an order accomplishing "the division of [Candy's] additional service credit resulting from her unused sick leave that was converted at the time of her retirement."

Terence contends that the trial court erred in denying him relief in his postjudgment motions based on "the principles articulated in *In re Marriage of Moore*." Terence is correct that under *In re Marriage of Moore*, the community has an interest in sick leave accumulated *prior* to separation when that sick leave is applied to obtain service credit at retirement. (*In re Marriage of Moore, supra,* 226 Cal.App.4th at p. 107 ["the community has no interest in accrued sick leave *except* when benefits are paid during the marriage *or upon retirement to the extent earned during the marriage*" (italics added)].) Thus, *if* Candy had any sick leave at the time she retired that was accrued *prior* to the parties' August 29, 2012 separation, any service credit she obtained with that sick leave would be credited to the community. As we

---

14 Specifically, the Statement of Decision explained, "Because the phrasing 'creditable service' was not used in the initial DRO, the federal Office of Personal [*sic*] Management deemed the pro-rata share not to include the sick leave. ([S]ee 5 C.F.R. § 838.623.)"

will explain, however, Terence's appellate challenge fails because Terence improperly raised the issue for the first time in his postjudgment motions, and he presented no meritorious ground for relief in those motions.

Initially, we note that Terence failed to present any argument or evidence at trial regarding Candy's accrued sick leave. Accordingly, the record contains no suggestion either: (1) that Candy had any unused sick leave accrued prior to August 29, 2012, that she used to obtain service credit when she retired, or (2) that if she *did* receive such service credit, Terence is not *already* receiving pension distributions under the QDRO reflecting that service credit. The QDRO for Candy's pension specifically states that Terence would get 50 percent of the "service credit attributable to [Candy's] period of service between the date of marriage and the date of separation," including any "purchased service credit earned by [Candy] during the Community Period." In contrast, the DRO for Terence's pension did not include any language regarding service credit earned during the marriage. If Terence had any doubt about whether the QDRO properly divided Candy's pension, he should have raised it before he stipulated to the QDRO in 2019, or at the latest, during trial and prior to the trial court's entry of a judgment affirming the QDRO.

Terence contended for the first time in his motion for a new trial that he was entitled to relief with respect to Candy's accrued sick leave based on the ground of "[a]ccident or surprise, which ordinary prudence could not have guarded against." (Code Civ. Proc., § 657, subd. (3).) The trial court properly denied relief. " ' "Surprise" as a ground for a new trial denotes some condition or a situation in which a party to an action is unexpectedly placed to his detriment. The condition or situation must have been such that ordinary prudence on the part of the person claiming surprise could not have

25

guarded against and prevented it. Such party must not have been negligent in the circumstances.' " (*Hata v. Los Angeles County Harbor/UCLA Medical Center* (1995) 31 Cal.App.4th 1791, 1806; see also *Kauffman v. De Mutiis* (1948) 31 Cal.2d 429, 432 [the terms "accident" and "surprise" have "substantially the same meaning"].) The record contains no suggestion that any circumstance, apart from his own possible negligence, prevented Terence from raising the issue prior to stipulating to the QDRO or during his trial presentation.

In addition, Terence argued that he was entitled to an order setting aside the judgment on the issue of Candy's accrued sick leave. (Code Civ. Proc., § 663.) In this context, that remedy would be available only if Terence established an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts." (*Id.*, § 663, subd. (1).) As we have explained, no evidence was presented at trial to establish that any sick leave Candy accrued prior to separation was converted to service credit upon retirement, or that if it was, the QDRO failed to properly take into account those service credits. The trial court therefore properly denied the motion to set aside the judgment, as Terence did not establish that the judgment concerning the QDRO for Candy's pension was contrary either to the law or to the facts presented at trial.

L. *Terence's Challenge to the Order Regarding the Payments to Preserve the Survivor Annuity Benefit in Terence's Pension*

Terence's pension includes a survivor annuity benefit that will be paid to Candy upon Terence's death. As a premium for that benefit, the pension administrator deducts a monthly amount from Terence's pension disbursement. (5 U.S.C. § 8339(j)(1), (4).) The trial court ordered that as of the date it issued the judgment, Candy would have the responsibility to pay

for the full cost of the survivor annuity benefit.[15]  However, prior to the date of judgment, the parties would equally share in the cost.  The trial court explained that it was holding the parties equally responsible for the cost of preserving the survivor annuity benefit prior to the judgment pursuant to section 2610, subdivision (a).  The trial court stated, "In order to preserve the asset until the final characterization the payment of the survivor benefit annuity was necessary.  Therefore, it is appropriate to require [Terence] to share in that cost up to the date the judgment becomes final and the asset is fully divided."

The trial court also explained that although it intended to equalize the cost of the survivor annuity benefit that the parties paid prior to the judgment, it did not have credible information about the amounts the parties had paid.  It accordingly reserved jurisdiction on the issue:  "The Court therefore reserves jurisdiction over payments made for the survivor benefit annuity over that time period until 120 days after the judgment becomes final.  Either party may file a request for order within that time to provide additional proof of how the survivor annuity reduction was withdrawn, the total amount of payments from date of separation until the date the judgment becomes final, and who paid how much during that time."

The trial court relied on section 2610, subdivision (a) for its order that the parties equally pay the cost of the survivor annuity benefit prior to the issuance of the judgment.  Under that provision, "the court shall make

---

[15]    Specifically, the trial court stated, "The Court terminates its ongoing order from April 5, 2018, ordering [Terence's] obligation to pay one-half of the survivor benefit as of now, but the Court reserves jurisdiction to award reimbursement to [Candy] up to the date this judgment becomes final, if either party raises the issue of equalization of the survivor benefit reductions in future litigation filed within 120 days of the judgment becoming final."

whatever orders are necessary or appropriate to ensure that each party receives the party's full community property share in any retirement plan, whether public or private, including all survivor and death benefits, including, but not limited to, any of the following: [¶] (1) Order the disposition of retirement benefits payable upon or after the death of either party in a manner consistent with Section 2550. [¶] (2) Order a party to elect a survivor benefit annuity or other similar election for the benefit of the other party, as specified by the court, when a retirement plan provides for that election . . . ." (§ 2610, subd. (a).)

Terence contends that the trial court did not have the authority under section 2610, subdivision (a) to order the prejudgment cost of the survivor annuity benefit to be paid equally by the parties. Specifically, according to Terence, "[s]ince an irrevocable election had already been made to provide a survivor annuity benefit to Candy, there was no need for the court to order an election of such benefit, and it never did so. Section 2610 does not address which party pays the cost of such benefit, so the court's reliance upon such statute to require Terence to pay part of its cost is misplaced."

We reject Terence's argument. "Generally speaking, a trial court's division of the community interest in retirement rights ' "will not be interfered with on appeal unless an abuse of discretion is shown. The criterion governing judicial action is reasonableness under the circumstances. The method adopted may vary with the facts in each case." ' " (*In re Marriage of Cooper* (2008) 160 Cal.App.4th 574, 580.) Section 2610, subdivision (a) does not limit the orders that the trial court may make in the interest of equally dividing the community portion of pension benefits. Instead, the trial court may, in its discretion, "make *whatever* orders are necessary or appropriate to ensure that each party receives the party's full community

28

property share in any retirement plan." (§ 2610, subd. (a), italics added.)
Under this provision, it was a reasonable exercise of discretion for the trial
court to require the parties to equally share in the cost of the survivor
annuity benefit pending final judgment. (Cf. *In re Marriage of Smith* (2007)
148 Cal.App.4th 1115, 1128 [the trial court did not abuse its discretion under
section 2610 by ordering the pension holder to pay a portion of the premium
for his former spouse to receive a survivor benefit]; 2 Turner, Equitable
Distribution of Property (4th ed. 2021) Specific Types of Property, § 6:46
["Where survivor benefits are divided, it is entirely reasonable to require the
nonowning spouse to assume a proportional share of the cost. Thus, the
parties should share in any reduction of the owning spouse's normal
retirement benefits which arises from election of survivor benefits."].)[16]

Terence also takes issue with the trial court's conclusion that it did not
have credible evidence about the amounts the parties paid for the survivor
annuity benefit after the date of separation. Terence sets forth certain
figures in his appellate brief and argues that the trial court should have
accepted them. We are not persuaded. The Statement of Decision provides a
detailed explanation for why, based on the formula that the federal pension
administrator uses to calculate the cost of survivor annuity benefit, the
figures that Terence presents do not appear to be correct. The trial court has
specifically reserved jurisdiction to allow the parties to submit further
information. As the trial court's ruling on the issue is not a final judgment on

---

[16]     In the Statement of Decision, the trial court stated that it could also
have relied on section 4360 in making the order equally dividing the
prejudgment cost of the survivor annuity benefit, but that the applicability of
section 4360 was "irrelevant" because it was basing its order on section 2610.
Terence contends that section 4360 is not applicable. We need not reach the
issue because the trial court plainly stated that its ruling did not depend on
the applicability of section 4360.

the issue, Terence does not challenge an order that is ripe for decision on appeal. Terence may apply to the trial court upon remand with credible figures showing the amount the parties paid for the survivor annuity benefit so that the trial court can equalize the parties' payments.

M.    *Terence's Challenge to the Trial Court's Calculation of How Much He Should Be Credited for the Income Tax He Paid on Candy's Share of His Pension Income*

The trial court ruled that Terence should be reimbursed for the income tax that he paid on Candy's share of his pension income from 2012 to 2014, prior to the DRO. However, the trial court explained that "[Terence's] numbers and requested amounts are inaccurate and not credible." The trial court therefore conducted its own calculations "by taking the gross pension amount, treating the parties as married filing jointly, applying the standard deductions, and using the Federal and California income tax rates. [Fn. omitted.]" The trial court explained that it would use the rate for the lowest tax bracket to calculate the income tax paid on the pension income. The trial court explained it was exercising its discretion in this manner "in large part because [Terence] made unilateral decisions about the debt forgiveness and when to take it."

Based on its calculations, the trial court concluded that, after deducting the income tax that it determined Terence to have paid on Candy's share of the pension, the total amount that Terence owed Candy for her share of Terence's pension income from 2012 to 2014 was $62,931.35.

Terence takes issue with the trial court's rejection of his calculations of the income taxes he paid on Candy's share of his pension income. Terence explains that his 2014 tax return is in the record, as it was submitted by Candy as a trial exhibit. Based on that tax return, Terence attempts to justify the calculations that he submitted at trial and argues that the trial

30

court erred by ignoring relevant evidence. Terence seeks either a new trial on the issue or an order requiring the appointment of an expert to calculate the income tax he paid on Candy's share of his pension income. As we will explain, we reject Terence's argument.

The trial court explained why it found Terence's calculations to be erroneous and not credible. "[Terence] lists taxation rates of 9.6% and 21%. He does not explain the basis for using these percentages. They are not the federal income tax rates combined with the California income tax rates. The numbers also are applied to an amount already reduced by tax payments and so [Terence] is requesting double credit for the payments. Even if the Court were to use his base numbers, [Terence's] math is simply wrong. He had material calculation errors for the pro-rata share for 1/2/13, 2/1/13, 3/1/13, 3/29/13, and 1/2/14."

Terence's appellate argument is based on the presence of his 2014 tax return in the record. Based on that document, he attempts to demonstrate that he had a sound basis for the 2014 figures that he presented at trial. We understand Terence's argument, but we are not persuaded that the trial court erred in rejecting Terence's figures and conducting its own calculations for the income tax Terence paid in 2012, 2013, and 2014 on Candy's share of his pension income. Regardless of whether Terence is now able to explain the basis for the 2014 figures he presented at trial, Terence did not do so at trial. Thus, the trial court properly rejected Terence's calculations. Moreover, even if Terence is now able to explain the basis for his calculations regarding the 2014 tax year, he does not address the other problems cited by the trial court regarding the figures that Terence set forth during the trial or the other two years of tax returns that are not in the record.

We accordingly conclude that because the trial court did not have reliable evidence regarding the amount of income tax Terence paid on Candy's share of his pension income from 2012 to 2014, the trial court was well within its discretion to rely on its own calculations rather than to accept Terence's assertions regarding those amounts.

N. *Terence's Challenge to the Trial Court's Calculation of the Amount Candy Is Entitled to for Her Share of Terence's Pension During the First Two Years After Separation*

Terence makes a brief and undeveloped argument regarding the trial court's determination that Candy should be credited for $62,931.35 as a reimbursement for her half of Terence's pension that Terence failed to share with her during the first two years after separation. Terence argues, "[The trial court's calculations] ignore the fact that Terence paid more than half of the gross amount of his pension from September 2014 through March 2017 because he was required by the court to pay half of the net amount of his pension until Candy began receiving her pro rata share directly from [the pension administrator], and fail to credit him for that difference. Ignoring the extra amounts that Terence paid in subsequent years resulted in an unequal division of that community asset which favored Candy." Terence says nothing more on this issue.

We do not address the argument because it is undeveloped and does not contain any citation to the record. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.) "We are not required to scour the record in search of support for a party's factual statements and may disregard such unsupported statements." (*Harshad & Nasir Corp. v. Global Sign Systems, Inc.* (2017) 14 Cal.App.5th 523, 527, fn. 3; see also Rule 8.204 [a party's brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears"].)

32

O.  *Terence's Challenge to the Selection Process for the Expert the Trial*
    *Court Ordered to Be Appointed*

To calculate the amount that Candy was underpaid from Terence's pension income after the DRO was issued, the trial court ordered an expert to be appointed pursuant to Evidence Code section 730. The trial court set forth the following procedure for selecting the expert: "[Candy] shall propose three names to [Terence] no later than 30 days after the judgment becomes final. [Terence] is to choose one of those three names within two weeks of receiving the names. If [Candy] does not choose a name within 30 days after the judgment becomes final [Terence] shall select the expert. If [Terence] does not choose a name within two weeks of receiving the three names, then [Candy] gets to select a name from the three names. The parties are to split the costs equally."

Terence challenges the selection procedure specified by the trial court.[17] He argues that "Such process greatly favors Candy, and is unwarranted under the circumstances. . . . Both parties have an equal interest in having a qualified, unbiased expert perform such calculations." According to Terence, "[a] fair and equitable selection process would allow each party to nominate three experts, and if the parties cannot agree on one of those experts, would require each party to submit one name to the court, which would make the final selection from those two names."

Terence has not established a basis for reversing the trial court's order. "Under Evidence Code section 730, it is well settled 'that a trial court has

_____

[17]    In the trial court, Terence raised the issue in his motion to set aside the judgment. "Since both parties were underpaid for the other's unused sick leave that was converted to service credit, the Court's determination that [Candy] should select the names of three experts to perform such calculations is not consistent with or not supported by the facts, and is legally incorrect or erroneous. The parties should mutually select the expert."

discretion in the appointment and selection of expert witnesses.' " (*Hulbert v. Cross* (2021) 65 Cal.App.5th 405, 417.) Here, in light of the long and contentious history of this litigation, it was reasonable for the trial court to set forth a process for choosing an expert that will be self-executing and will give both parties a role in the selection process. Terence's proposed approach, in contrast, would require the expenditure of additional court resources in deciding between the parties' proposed experts and would further prolong this already lengthy litigation. The trial court did not abuse its discretion.

P.  *Terence's Challenge to the Ruling Regarding Candy's Entitlement to $3,000 in Separate Property Funds She Deposited in the Community Bank Account*

At trial, the evidence showed that Candy deposited $75,000 of separate funds into the community bank account in April 2011, but it was depleted by Terence's use of those funds to pay community expenses without her knowledge and contrary to her expectation.

As to Candy's request that she be reimbursed for the $75,000 in separate property funds, the trial court explained, "[Terence] acknowledged using [Candy's] separate property that was deposited into a joint checking account to pay community bills during marriage. The Court finds that he did not seek [Candy's] permission before doing so or receive her permission." The trial court stated that it was unable to trace Candy's separate funds to the acquisition of any item in the community property estate that it could award to Candy. Nevertheless, the trial court awarded $3,000 to Candy based on the following reasoning: "The Court also considered whether these payments could be viewed as payments of community debts reimbursable under . . . section 914. For such payments to be reimbursable, there must be community funds available and not used. (. . . § 914, subd. (b).) On April 18, 2019, [Terence] testified that there was a $3000 balance in the account the

34

[separate property] funds were deposited into after the community bills were paid. [Candy] is entitled to reimbursement of those $3000 under . . . a theory it was [Candy's] remaining separate property . . . ."

Terence challenges this ruling. He argues, "The court erroneously found that '[o]n April 18, 2019, [Terence] testified that there was a $3000 balance in the account the funds were deposited into[,] after the community bills were paid.' . . . In fact, Terence testified that '[o]n the date of separation there was $281.12 in the parties' joint checking account, and $13.92 in the parties' joint savings account, for a total of $295.04.' . . . The parties' joint bank account statement for that period corroborates his testimony."

As we will explain, we reject Terence's argument. The trial court relied on section 914, subdivision (b). As relevant here, under that provision a spouse may obtain reimbursement for using separate property to pay a spouse's necessaries of life *before* separation if "separate property is so applied at a time when nonexempt property in the community estate or separate property of the person's spouse is available but is not applied to the satisfaction of the debt." (§ 914, subd. (b).) In such a case, "the married person is entitled to reimbursement to the extent such property was available." (*Id.*) Thus, Candy would be entitled to reimbursement under section 914, subdivision (b) if she could show that some of her $75,000 in separate property was used to pay Terence's necessaries of life prior to separation at a time when community funds or Terence's separate funds were also available.

The trial court premised its ruling on Terence's trial testimony on April 18, 2019. Terence testified that in 2011, approximately $200,000 was deposited into the parties' community account, and that $75,000 of those funds were Candy's separate property funds. According to Terence, in that

35

year, "[r]oughly $197,000 was paid out of that." That leaves $3,000 in community funds at the end of the year that were not paid out. Based on this testimony, substantial evidence supports a finding that in 2011, $75,000 of Candy's separate property funds were used to pay community expenses, but $3,000 of community funds remained, which could have been used to pay at least some of those expenses. Under section 914, subdivision (b), Candy is entitled to reimbursement in the amount of $3,000.

Q. *Terence's Challenge to the Ruling Denying Reimbursement for Half of the Cost of Groceries*

For the period after separation until July 2013, the parties lived in the Campo house, during which Terence paid many of the parties' expenses. For this time period, the Court awarded Terence half of the amounts he identified "related to the costs of the mortgage, property taxes, special assessment, property insurance, earthquake insurance, satellite TV, electricity, water, cell service, and landline phone service," all of which it found to be credible. Candy was accordingly ordered to pay $11,590.49. However, the trial court rejected Terence's claim for reimbursement for the purchase of groceries during that time period. The trial court stated, "The Court did not find [Terence's] claims for groceries to satisfy his burden of proof that [Candy] should be required to split those costs." Terence argues he should be reimbursed for half of his claimed $500 in monthly expenditures on groceries and household supplies. He states that otherwise, "[t]he court's order would result in an unequal division of the community estate and would essentially provide Candy with an unjustified form of spousal support, and therefore should be vacated."

We reject Terence's argument because it fails to address the trial court's reason for denying his reimbursement claim for the grocery expenditures: his failure to satisfy his burden of proof. The only evidence

36

that Terence cites for his contention that he spent $500 per month on groceries are the income and expense declarations he and Candy filed in 2013, both of which listed an *estimated* monthly cost of $500 for "groceries and household supplies." " 'The trier of fact is the sole judge of the credibility and weight of the evidence . . . .' " (*In re Marriage of Greenberg* (2011) 194 Cal.App.4th 1095, 1099.) Absent more specific proof of the actual amounts paid for groceries during the relevant time frame, the trial court was within its discretion to conclude that the estimates in the income and expense declarations provided insufficient credible evidence to support Terence's contention that he paid $500 per month on groceries and should be reimbursed for half of that amount.

R. *Terence's Challenge to the Ruling Denying Him Reimbursement for Half of the Expenses of the Campo House After Candy Moved Out*

The trial court ruled that Terence was responsible for the full amount of expenses attributable to the Campo house after Candy moved out starting August 2013, including the mortgage, taxes, and insurance. Terence contends that he should have been reimbursed for half of those payments because they were for community debts.

The trial court explained that although it had discretion to order reimbursement in cases it deemed appropriate for pre-existing community debts paid after separation but before trial (§ 2626; *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 83) (i.e., "*Epstein* credits"), it would not do so based on the following principle: "[A]s to at least one category of assets—a community asset being used by one spouse between separation and trial—no reimbursement should be ordered unless the amount of the debt payment greatly exceeds the value of the use of the asset. Thus, reimbursement will usually not be ordered for payments on obligations on the family home made by the spouse remaining in the home." (*Hebbring v. Hebbring* (1989) 207

37

Cal.App.3d 1260, 1271 (*Hebbring*).)  The trial court also cited *In re Marriage of Stallworth* (1987) 192 Cal.App.3d 742, 751.  Terence argues that those cases do not apply because "[b]oth of those cases dealt with situations where only one party used the community's only real property.  In this case, each party lived in one of the community's two real properties."  Terence points out that the trial court did not require Candy to bear the mortgage and associated expenses for the El Cajon house, and that it should have ordered the same with respect to the Campo house.

We apply an abuse of discretion standard of review.  (*In re Marriage of Oliverez* (2019) 33 Cal.App.5th 298, 318.)  The trial court has "broad discretion" when determining whether to award *Epstein* credits.  (*Hebbring*, *supra*, 207 Cal.App.3d at p. 1272.)

Terence has not established that the trial court abused its discretion. The situation of the El Cajon house is different from the situation of the Campo house because, as we have explained, there was community rental income from the El Cajon house while Candy lived there.  The trial court determined that those community funds were presumed to have been used to cover the community's cost for that income-producing property.  Thus, it is reasonable for the trial court to have treated the two properties differently and to arrive at the conclusion that Terence would not be reimbursed for the mortgage and associated expenses of the Campo house, but that the expenses for the El Cajon house were to be covered by the income it produced.

S.    *Terence's Challenge to the Trial Court's Ruling That Candy Did Not Have to Reimburse Half of the Cost of the Telephone Service for Their Adult Children*

With respect to Terence's claim for reimbursement of his payment of community expenses from the date of separation to July 2013, the trial court ruled, "The Court does not find that [Candy] should reimburse the costs of

phone service for the adult children. Any dispute [Terence] has with the adult children, is with the adult children, not [Candy]." Terence argues that "[t]he wireless telephone expenses were community debts since the account had been a family plan paid for by the community."

Terence has not established that the trial court abused its discretion by declining to reimburse him for the expenses attributable solely to his adult children's cell phones. The trial court reasonably could have concluded that the amounts Terence paid from his separate property to benefit his adult children did not amount to the payment of community debts or the common necessaries of life for either of the parties. (§§ 914, 2626.) Accordingly, Terence is not entitled to reimbursement from the community for his payment of those amounts.

T.    *Terence's Challenge to the Ruling Regarding His Payment of Candy's Health Insurance and Automobile Insurance Premiums*

Terence makes two challenges to the trial court's failure to award him reimbursement for his payment of Candy's insurance premiums.

First, Terence sought reimbursement for the health insurance premiums that he paid for Candy in 2013. Terence contends he paid a total of $2,411.76 for Candy's health insurance premiums. The trial court ruled, "[Terence] requested reimbursement for the cost of covering [Candy] on his health insurance post-separation. Given that [Terence] did not pay spousal support and failed to provide [Candy] her portion of the pension, the Court views these payments as really based on [Terence's] duty to support [Candy] and should not be reimbursed under *Epstein*. The Court views this as different from the bills paid in relation to [Candy] remaining in the residence based on the nature of insurance payments being covered under section 2040." Terence argues that "[t]he court mistakenly relied on section 2040" because "[t]hat section address [*sic*] the continuation of, *inter alia*, insurance

39

policies, but does not address which party is responsible for the payment of premiums for such coverage."

Terence does not dispute the trial court's decision to analyze the health insurance premium payments using the principles applicable to *Epstein* credits. (*Epstein, supra,* 24 Cal.3d at p. 83.)[18] However, he contends that under the principles applicable to *Epstein* credits, he should have been reimbursed. As we have explained, the trial court has broad discretion in deciding whether to provide *Epstein* credits for postseparation community expenses paid from separate funds. (*Oliverez, supra,* 33 Cal.App.5th at p. 318; *Hebbring, supra,* 207 Cal.App.3d at p. 1272.) As relevant here, *Epstein* states that reimbursement may be denied " 'where the payment . . . constituted in reality a discharge of the paying spouse's duty to support the other spouse . . . .' " (*Epstein, supra,* 24 Cal.3d at pp. 84-85.) As the trial court explained, the payment of the health insurance premiums were in lieu of support during the period when Terence failed to share his pension income with Candy. The trial court therefore reasonably exercised its discretion to deny reimbursement on that basis.

Terence also contends that the trial court "erred by failing to address Terence's entitlement to reimbursement for post-separation auto insurance premiums that he paid for Candy." Terence cites to a trial exhibit, in which he listed those payments and sought reimbursement for them. Specifically, as he did in the trial court, Terence seeks reimbursement in the amount of

---

18      We therefore do not consider whether the health insurance premiums could be analyzed as a debt incurred for common necessaries of life of the person's spouse after the date of separation under section 914, subdivision (a).

$2,086.60.[19]  In his objection to the trial court's tentative statement of decision, Terence objected that the trial court had failed to rule on his reimbursement request:  "[Terence] objects to the Court's failure to address his entitlement to reimbursement for the costs that he paid for the portion of post-separation automobile insurance premiums attributable to [Candy], as well as its failure to reimburse him for such expenses."

The trial court did not address the issue in its final Statement of Decision.  We therefore may not imply findings on the issue.  (Code Civ. Proc., § 634 ["When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under [Code of Civil Procedure] [s]ection 657 or [Code of Civil Procedure section] 663, it shall not be inferred

---

[19]    In his January 7, 2020 revised amended trial brief at pages 12 and 13, Terence stated, "[Terence] should receive credit for half of the $497.31 that he paid in automobile insurance premiums for the parties' shared use of a community vehicle from the date of separation through April 2013, resulting in a credit to him of $248.65.  [Terence] should receive credit for two-thirds of the $2,756.93 that he paid in increased automobile insurance premiums after [Candy] purchased a new vehicle for her exclusive use from May 2013 through August 2014, resulting in a credit to him of $1,837.95.  ([Terence's] insurance premiums decreased by two-thirds after [Candy] was dropped from his policy in September 2014.)  [Terence's] total credits for automobile insurance premiums should be $2,086.60."  In his specification of principal controverted issues filed after trial, Terence included the following items: "32. Whether [Terence] should be reimbursed for half of the cost of the post-separation vehicle insurance premium payments that he paid while the parties' [sic] shared the use of a vehicle until he purchased his own vehicle in May 2013, and if not, why not.  [¶]  33. Whether [Terence] should be reimbursed for all of the costs of providing [Candy] with automobile insurance after he purchased his own vehicle in May 2013, and if not, why not."

on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."].)

We direct that on remand the trial court should expressly rule on Terence's request for reimbursement arising from his payment of Candy's automobile insurance premiums.

U. *Terence's Challenge to the Trial Court's Failure to Reimburse Him for Half of His Payment of the Real Estate Appraisal in 2018*

The trial court ordered a real estate appraisal to be performed in 2018. Terence was ordered to pay for the cost, "subject to reallocation." Terence contended in his trial brief that he paid $800 for the appraisal.

Terence's appellate brief makes the following assertion: "Despite Terence's request for a determination regarding the reallocation of such costs, the court never ruled on such matter." He argues "it was error for the court not to reallocate the costs of the appraisals equally."

Terence has failed to develop his argument by providing any citation to the record regarding his payment of the appraisal costs or a request for reallocation. Accordingly, we reject the argument as insufficiently developed and unsupported by the necessary citations to the record. (*United Grand, supra*, 36 Cal.App.5th at p. 153.)

V. *Terence's Payment of Community Debt in the Amount of $63,272.80*

Terence points out that the trial court found that he paid $63,272.80 in community debt. It appears that the trial court intended that Terence would be reimbursed for half of that payment, which would be $31,636.40. However, as Terence correctly points out, the trial court did not expressly order reimbursement. Further, because as we have explained, it is unclear how the trial court calculated Terence's entitlement (before the imposition of sanctions) to an equalization payment of $19,016.30, we are unable to determine on appeal whether, in fact, the trial court credited Terence with

42

$31,636.40 for his payment of the community debt. Therefore, we direct that on remand, in examining how it arrived at the amount of the equalization payment that Candy owed to Terence, the trial court shall confirm that Terence has been credited with $31,636.40 and shall adjust the equalization payment if no such credit was given.

W.   *Terence's Payment of $20,000 of Separate Property Funds in 2009 to Satisfy a Community Debt*

Terence states that in 2009, he paid $20,000 of separate property inheritance funds to his son for the purpose of reimbursing the son for his payment of Terence and Candy's community debts. In an undeveloped argument that fails to provide a citation to the trial court's ruling on the issue, Terence contends that the trial court erred in failing to reimburse him for half of the $20,000.

The trial court ruled on the issue as follows: "[Terence] claims he made a separate property payment of $20,000 on community debts from his inheritance. This occurred before the date of separation. It appears that inheritance was deposited into the one of the parties' sons accounts, not into a joint account. The funds therefore were not comingled and therefore remained separate property. Testimony supports that it was for the payment of a loan obtained during the marriage. For reimbursement under . . . section 914, subdivision (b), there would need to be a showing that it was 'applied at a time when nonexempt property in the community estate or separate property of the person's spouse is available but is not applied to the satisfaction of the debt . . . .' ( . . . § 914, subd. (b).) The evidence did not address the existence or non-existence of other community funds available to satisfy the debt. Therefore, [Terence] did not meet his burden of proof to receive reimbursement for that payment."

43

Terence makes no argument addressing the ground upon which the trial court based its ruling. Specifically, he makes no attempt to point to any trial evidence showing that community funds were available to satisfy the debt he paid with his $20,000 in separate property. We conclude that Terence has therefore failed to establish that the trial court erred.

X. *Terence's Challenge to the Trial Court's Failure to Reimburse the Community for the Funds Candy Withdrew Shortly Before the Date of Separation*

On August 27, 2012, two days prior to the date of separation, Candy withdrew $6,660 from community bank accounts. The trial court rejected Terence's argument that Candy should reimburse the community for that amount. As the trial court explained, "The withdrawal was August 27, 2012. This is before the date of separation . . . therefore [Terence] is not entitled to reimbursement."

Terence argues that the trial court's ruling should be reversed because Candy's withdrawal of the funds "was not even remotely beneficial to the community" and "[u]pholding the court's ruling would encourage parties to withdraw all of the funds from community bank accounts in advance of filing for dissolution of marriage." Terence has cited no authority to support his argument or to suggest that the trial court improperly relied on the date of separation in making its ruling. We accordingly reject Terence's argument on the ground that it is insufficiently developed and is not supported by adequate legal authority. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

Y. *Terence's Challenge to the Trial Court's Order Regarding Spousal Support*

The trial court ruled on Candy's request for spousal support by deciding that support was not warranted. The trial court explained that if legally permitted to do so, it would terminate jurisdiction over any further spousal support order, but it was not authorized to do so. Therefore, the trial court

retained jurisdiction. Specifically, the trial court stated, "Based on . . . section 4336 and the length of this marriage, the Court does not view itself as having the ability to terminate jurisdiction at this time. The Court does however find that the evidence shown at trial is that each party has the ability to meet their needs at this time. (See *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453.) This is based on the distribution of the pension funds and both parties retiring. If this Court viewed itself as having the authority to terminate spousal support jurisdiction at this time, it would. The Court is making a finding under . . . section 4322 that [Candy] has sufficient separate estate for her own proper support. The Court is therefore setting spousal support at $0. [Candy] would need to show significant changed circumstances in the future for any spousal support to be awarded."

Terence contends that the trial court erred in failing to terminate jurisdiction over spousal support. Terence argues, "Section 4336 clearly and unambiguously authorizes courts to terminate jurisdiction over spousal support in cases of long-term marriages." He also contends that "[t]he facts in this case support and favor termination of jurisdiction over spousal support."

We agree with Terence that there is no statutory provision that prevents a trial court from expressly terminating continuing jurisdiction over spousal support if it determines that such an order is warranted. Section 4336, subdivision (a) states, "Except on written agreement of the parties to the contrary or a court order terminating spousal support, the court retains jurisdiction indefinitely in a proceeding for dissolution of marriage or for legal separation of the parties where the marriage is of long duration." This statute "is clear and unambiguous in providing two mechanisms for divesting the court of its jurisdiction over spousal support issues in cases of long-term

45

marriages. The parties may agree to such termination, or the court may order it. In either case, only specific language of termination will divest the court of its fundamental jurisdiction." (*In re Marriage of Ostrander* (1997) 53 Cal.App.4th 63, 65-66.) Thus, the trial court was mistaken in stating that it did not have "the authority" to terminate jurisdiction over spousal support. On remand, the trial court shall decide whether to exercise its discretion to make an express order terminating jurisdiction over spousal support. We express no opinion on how the court should exercise its discretion.

Terence also takes issue with one of the findings made by the trial court during its analysis of the factors used to decide whether to order spousal support. Specifically, the trial court stated that Terence "has some ability to pay spousal support." Terence contends that the evidence does not support that finding. We do not reach Terence's challenge because it does not present a justiciable controversy. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573 [describing justiciability requirements for appeal].) Currently, there is no spousal support order in place because the trial court ruled in favor of Terence, finding that no spousal support order was warranted. If the trial court decides to retain jurisdiction over spousal support and then makes a future order requiring Terence to pay support, any such order will necessarily be based on findings on that future date about Terence's financial situation at that time, not on the trial court's finding in 2020. Terence may bring a future challenge regarding such a finding if it becomes necessary to do so.

Z.    *Terence's Challenge to the Award of Sanctions Against Him*

The trial court imposed sanctions on Terence pursuant to section 271 in the amount of $37,500.

Section 271, subdivision (a) gives a trial court the authority to "base an award of attorney's fees and costs on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (§ 271, subd. (a).) "The purpose of section 271 is ' "to promote settlement and to encourage cooperation which will reduce the cost of litigation." [Citation.]' . . . 'Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction.' " (*Parker v. Harbert* (2012) 212 Cal.App.4th 1172, 1176, citation and footnote omitted.)

" 'The imposition of sanctions under section 271 is committed to the sound discretion of the trial court. The trial court's order will be upheld on appeal unless the reviewing court, "considering all of the evidence viewed most favorably in its support and indulging all reasonable inferences in its favor, no judge could reasonably make the order." ' " (*Sagonowsky v. Kekoa* (2016) 6 Cal.App.5th 1142, 1152 (*Sagonowsky*).) " 'We will not interfere with the order for sanctions unless the trial court abused its broad discretion in making it.' " (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 828.)

The trial court devoted several pages of the Statement of Decision to explaining the instances of Terence's conduct during the course of the litigation that formed the basis for the sanctions award. The trial court specifically reviewed Terence's conduct with respect to (1) filing numerous requests for orders and ex parte requests; (2) filing requests for reconsideration or to set aside prior orders, which often failed to allege why Terence could not have earlier raised the issue; (3) failing to participate with

47

the discovery referee and delaying in participating with a forensic expert; (4) filing two ex parte requests within a week of the same ex parte request being denied; (5) resolving $51,105 of debt without first notifying Candy and taking unilateral action to cancel automobile insurance, which the trial court viewed as violating the temporary restraining orders imposed under section 2040 related to insurance and extraordinary expenditures; (6) failing to share his pension with Candy for two years, resulting in litigation of the issue; and (7) engaging in "multiple behaviors that drastically lengthened the trial," including lengthy pauses during his testimony, repeatedly attempting to reargue rulings he did not like, and presenting cumulative testimony. The trial court's conclusion was that "[o]verall, the Court finds that [Terence] engaged in more behavior than [Candy] that frustrated 'the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys.' " However, the court noted that in setting the amount of sanctions, "the Court took into consideration the cost of [Candy's] behavior to [Terence] and the delays caused by her conduct."

Terence takes issue with the trial court's characterization of his conduct as warranting sanctions. Among other things, he argues that (1) many of his requests for orders or motions for reconsideration were legally justified; (2) Candy engaged in more time-consuming and unnecessary motion practice than he did; (3) he was justified in refusing to participate with the discovery referee; (4) the trial court misunderstood the nature of his repeated ex parte applications; (5) his cancellation of the community debt did not technically violate the temporary restraining order against unilateral acts under section 2040 because cancelling debt is not an "expenditure"; (6) for several reasons, his failure to share his pension with Candy for two years did

48

not warrant sanctions; and (7) his behavior that lengthened the trial was understandable because he was self-represented.

We understand Terence's arguments, but we conclude that they do not present a basis for reversal of the trial court's sanctions order. It is not our role as an appellate court to determine, in the first instance, whether sanctions are warranted. Further, an appellate challenge to a sanctions order is the wrong forum in which to relitigate the merits of motions, arguments, and filings that Terence presented in the trial court. " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682.) The trial court was in the best position to evaluate whether, taken as a whole, Terence's conduct frustrated the policy of promoting settlement and unnecessarily increased the cost of litigation. Here, the trial court provided an extensive and informed discussion, in which it set forth the basis for its conclusion that Terence had engaged in conduct that warranted the imposition of sanctions. Although Terence disagrees with the trial court's characterization of his conduct, he has not established that " ' "no judge could reasonably make the order." ' " (*Sagonowsky, supra,* 6 Cal.App.5th at p. 1152.)

In challenging the sanctions order, Terence also takes issue with the trial court's statement that "[t]he fees claimed by [Candy] ($73,000) seem realistically tied to the complexity and length of this case." As we understand Terence's argument, he contends that at least some of the attorney fees incurred by Candy should not have been included in the sanctions award. The argument fails because, under section 271, a trial court is not limited in

49

the type of attorney fees incurred by the other party that it can award as sanctions. (See *In re Marriage of Corona* (2009) 172 Cal.App.4th 1205, 1226 ["a sanctions award under section 271 need not 'be limited to the cost to the other side resulting from the bad conduct' " and "does not require a correlation between the sanctioned conduct and specific attorney fees"].) Further, Terence's argument fails because the trial court awarded Candy far *less* than the full amount of the $73,000 in attorney fees that the trial court found she incurred. Thus, even were we to agree with Terence that some of the attorney fees were unnecessary and should not have been awarded under section 271, the trial court's award of $37,500 is consistent with that position.

Finally, Terence argues that the sanctions order should be reversed because it places an unreasonable financial burden on him. (See § 271, subd. (a) ["The court shall not impose a sanction pursuant to this section that imposes an unreasonable financial burden on the party against whom the sanction is imposed"].) The argument lacks merit. The trial court ensured that its sanctions order would not place an unreasonable financial burden on Terence by ordering that Terence may pay the sanctions in monthly increments of $250. Although Terence argues that he has "other considerable debts" that he is also obligated to pay, he has not shown that it would pose an unreasonable financial burden for him to make payments on the sanctions award in the amount of $250 per month while still making payments toward his other debts.

AA.    *Terence's Challenge to the Ruling on His Request for Sanctions Pursuant to Section 271*

The trial court also considered Terence's request that Candy be ordered to pay him $12,000 in attorney fees as sanctions pursuant to section 271. The trial court declined to do so, but it explained that it had reduced by $7,500 the amount that it would have otherwise awarded to Candy as sanctions

under section 271 because of Candy's conduct during the litigation that frustrated the policy of settlement. Terence challenges the trial court's ruling on several grounds.

First, Terence contends that the trial court erred in arriving at $7,500 as the amount by which it would reduce the sanctions award against him. He contends the amount should have been higher if the trial court properly considered all of Candy's conduct during the litigation that Terence views as frustrating the policy of settlement and unnecessarily increasing the cost of litigation. Terence devotes three pages of his appellate brief to listing the various events during the litigation that he contends the trial court should have considered.

We reject the argument. The trial court made clear in the Statement of Decision that it had thoroughly considered the litigation conduct of both parties. Having done so, the trial court identified instances of Candy's conduct that it believed violated the policies underlying section 271. These included Candy's aggressive trial strategy, which caused trial delays, her focus on issues related to infidelity despite the trial court's repeated admonitions that California is a no-fault state, and her conduct regarding her final declaration of disclosure. Without any specific evidence to the contrary, we presume that the trial court considered the additional instances of conduct that Terence identifies as sanctionable but that it disagreed with Terence's characterization of that conduct. Based on the broad discretion afforded to the trial court in determining whether to award sanctions under section 271, we cannot conclude that " ' "no judge could reasonably make the order." ' " (*Sagonowsky*, *supra*, 6 Cal.App.5th at p. 1152.)

Second, Terence requested sanctions in the amount of $12,000 for the attorney fees incurred by his attorney Denny Kershek, but the trial court

51

concluded that Terence had not established the reasonableness of those fees. The trial court explained, "Based on the record before it, this Court does not find $12,000 in fees a reasonable amount for the work the Court has evidence of Mr. Kershek performing. Mr. Kershek substituted in October 1, 2014. He substituted out March 24, 2016. On October 8, 2014, Mr. Kershek filed a notice of lodgment for 3 documents, these totaled 13 pages: an unredacted version of [Terence's] declaration (5 pages), a letter sent to [Candy] 9/30/14 (4 pages), and a proposed DRO (4 pages). These are the only documents Mr. Kershek filed with the court other than substitutions of counsel. The DRO was prepared by attorney Corey Schechter not Mr. Kershek. Mr. Schechter's fees appear reasonable for the work performed. Mr. Kershek appeared at eight hearings. These hearings were either Family Resolution Conferences or Request for Order hearings on the same request, continued multiple times. It is definitely possible that work was conducted that would justify $12,000, but such work is not demonstrated in the record before the Court." Terence does not attempt to show that, during trial, he presented evidence justifying Mr. Kershek's fees. Therefore, we conclude that Terence has not met his burden to show that the trial court erred in ruling that Terence had not established the reasonableness of Mr. Kershek's fees.

Finally, Terence contends that because he was self-represented for most of the litigation, the trial court should have awarded him the costs he incurred during the litigation, including his travel expenses, just as it would have awarded those costs if incurred by an attorney. The trial court rejected that argument on several grounds. First, it explained that Terence cited inapposite case law that did not arise under section 271, and that an award of sanctions under section 271 must be tied to attorney fees and costs. Next, the trial court explained that it would not award travel costs under section 271,

52

even if they were incurred by an attorney. The trial court's decision is consistent with the relevant case law. (*In re Marriage of Erndt and Terhorst* (2021) 59 Cal.App.5th 898, 904 [a self-represented attorney litigant may not recover attorney fees in the nature of sanctions under section 271 because sanctions must be tethered to attorney fees and costs]; *Menezes v. McDaniel* (2019) 44 Cal.App.5th 340, 351 [a party's travel costs are not attorney fees or costs that may be awarded as sanctions under section 271].) Just as important, however, the trial court explained that *even if* Terence's costs as a self-represented litigant could form the basis for a sanctions order under section 271, it had concluded based on the parties' conduct during the course of the litigation that an award of sanctions in Terence's favor was not warranted. The trial court was within its discretion to deny such an award based on its evaluation of the parties' conduct, regardless of whether Terence's costs as a self-represented litigant might be awarded in different circumstances.

AB.   *Terence's Challenge to the Trial Court's Ruling Regarding the Parties' Unsecured Community Debt*

The Statement of Decision addressed the parties' unsecured debt from their credit cards as follows: "The Court finds [Terence] credible in alleging $78,575.48 in unsecured debt obtained during the marriage on the Discover, American Express Costco and American Express Optima cards. The parties will split those debts equally. [Terence] requests the Court order that if one party takes action to restart the statute of limitations on those debts, that party shall be solely liable for the debt. He cites no authority for this request and provides no explanation of how this would be an equal division of the debt, which as the Court noted above—in his favor—is a requirement under California law. The Court maintains jurisdiction related to the enforcement of the division of the debts and reimbursements for those debts."

Terence challenges this ruling, contending that it is "unsupported by the facts and erroneous." Although Terence's argument is unclear, we understand him to be contending that, instead of equally dividing the debt, the trial court should have ruled that any party who takes action to restart the statute of limitations on any of the debt should be responsible for the *entire* amount of that debt.

We need not reach this issue as it is not ripe for adjudication. The trial court reserved jurisdiction "related to the enforcement of the division of the debts and reimbursements for those debts." Therefore, if an issue arises in the future due to any action by Candy that restarts the statute of limitations on any of the parties' debt, Terence may assert in the trial court any argument he has for reimbursement.

AC. *Terence's Contention That the Trial Court's Order Regarding the Aljoa Trailer Was Unclear*

The Statement of Decision contains a ruling on how the parties' Aljoa trailer was to be handled. "The Court orders the Aljoa trailer to be sold. [Terence] is to convey the trailer to [Candy] within 3 weeks of the judgment becoming final. [Candy] has one year from that date to sell the trailer. The proceeds from the sale are to be equally divided between the parties. The Court retains jurisdiction over enforcement of judgment in regards to the trailer, including failure to convey or sell the trailer in the time frames."

Terence contends that the trial court's order was unclear as to whether in stating that Terence was to "convey" the trailer to Candy, the trial court meant that Terence was responsible for the cost of *physically* moving the trailer to Candy's location. In context, we understand the court to have ordered that Terence was *to convey title* of the trailer to Candy so that she could then undertake efforts to sell it, not that he was to pay to physically move it. That interpretation is consistent with the trial court's use of the

54

word "conveying" in the Statement of Decision in referring to the El Cajon and Campo houses.

We note, moreover, that the trial court reserved jurisdiction over the issue of the trailer. Therefore, if either party determines that the Statement of Decision leaves open any outstanding issue with respect to the trailer, the parties may apply to the trial court for relief.[20]

AD.  *Terence's Contention That He Did Not Receive a Meaningful Hearing on His Postjudgment Motions*

After the trial court entered judgment, Terence filed a motion for a new trial (Code Civ. Proc., § 657) and a motion to set aside and vacate the judgment (Code Civ. Proc., § 663). Terence contends that the trial court "failed to give proper consideration to such motions, including failing to afford Terence a meaningful hearing regarding them." He specifically takes issue with (1) the trial court's statement at the hearing on the motions that it would give Terence "a brief time" to argue; (2) the fact that the trial court did not let Terence interrupt while it was delivering its ruling on the motions; and (3) the trial court's reference to the Statement of Decision in explaining its basis for denying relief on several of the issues presented in the postjudgment motions.

Terence has not established any deficiency in the hearing on the postjudgment motions. The reporter's transcript of the hearing on the posttrial motions shows that Terence was given a reasonable amount of time to argue. Terence himself chose to present a very limited argument, in which he (1) relied on his motion papers for one of the motions, stating that he did

---

[20]  As the issue may arise on remand, we note that in his appellate briefing, Terence has taken the position that if Candy pays to physically move the trailer, she may later "deduct such costs from the proceeds of the sale," just as she would deduct other costs of restoring the trailer.

55

not want to waste the court's time; and (2) raised only a single issue regarding the other motion, stating that he had nothing additional when the trial inquired whether he had any further comments. Moreover, despite the trial court's reference to the Statement of Decision during its ruling on several of the issues presented, the trial court clearly considered the merits of the postjudgment motions and whether they met the standard for postjudgment relief.

AE. *Terence's Challenge to the Order Requiring Him to Pay Waived Court Fees*

In 2017, the trial court issued an order waiving Terence's payment of his court fees and costs.

Government Code section 68637, subdivision (e) provides, "If a judgment is entered in a family law case, the trial court shall consider, based on the information in the court file, whether a party's circumstances have changed so that it is reasonable to require a party who received an initial fee waiver to pay all or part of the fees that were initially waived. In making this determination, the court shall use the criteria for eligibility set forth in [Government Code] [s]ection 68632." (Gov. Code, § 68637, subd. (e).)

On August 11, 2020, after judgment was entered, the trial court issued an order requiring Terence to pay $3,588 in previously waived costs and fees. The order stated that Terence was to make payment in the amount of $75 per month starting on December 1, 2020. Terence moved to set aside the order. In September 2020, the trial court denied Terence's motion to set aside the order, but it extended until August 2021 the commencement date for the monthly payment of $75. In denying the motion, the trial court explained that since the fee waiver was issued, Terence had paid off his car and his mortgage and had begun to receive additional income from Candy's pension,

56

which the trial court calculated was "about $2,000 a month net positive." Moreover, Terence had at least $300,000 in assets.

Terence contends that the trial court erred in determining that his circumstances had changed. Terence makes a vague argument that he should not have been ordered to pay the waived fees because his "income barely exceeded his expenses." We reject Terence's argument for several reasons. First, Terence does not provide any citation to the record to support his contention about his financial condition. Next, Terence does not attempt to address the reasons that the trial court gave in September 2020 for denying his motion to set aside the order, and thus he does not show that the trial court erred. Finally, even though Government Code section 68637, subdivision (e) states that the court shall use the "criteria for eligibility set forth in [Government Code] [s]ection 68632" when deciding whether a party's circumstances have changed so that it is reasonable to require them to pay waived fees, Terence makes no attempt to identify those criteria or to show how the criteria apply to his situation. In sum, Terence's argument fails because he has not adequately developed it and he has not provided the necessary citations to the record and to legal authority. (*United Grand*, *supra*, 36 Cal.App.5th at p. 153.)

## DISPOSITION

This matter is remanded to the trial court for the following proceedings: First, with respect to the equalization payment that Candy would have owed to Terence prior to the imposition of section 271 sanctions, the trial court shall resolve an inconsistency between (a) the mathematical sum of the specific individual monetary amounts identified throughout the Statement of Decision as credits to either party, and (b) the total amount of $19,016.30 identified as the equalization payment that Candy would have otherwise

57

owed to Terence. In so doing, the trial court shall (1) confirm that it has included a credit of $31,636.40 reflecting Terence's payment of community debt; (2) correct any errors that it discovers with respect to the figures set forth in the Statement of Decision; and (3) amend the judgment accordingly. Second, the trial court shall rule on Terence's request for reimbursement of the auto insurance premiums he paid for Candy. Third, the trial court shall decide whether to exercise its discretion to make an express order terminating jurisdiction over spousal support.

In all other respects, the judgment and the trial court's postjudgment orders are affirmed. To the extent Terence has incurred costs on appeal that are not covered by the fee waiver ordered November 20, 2020, he shall bear those costs himself.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DATO, J.